FILED
COURT OF APPEALS
DIVISION II

2013 APR 16 AM 9:08

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of | No. 42334-1-II |
| VALERIE DAWN TOLLEFSEN, | |
| Respondent and Cross Appellant, | |
| and | |
| GARY A. TOLLEFSEN, | UNPUBLISHED OPINION |
| Appellant and Cross Respondent. | |

QUINN-BRINTNALL, J. — Gary Tollefsen appeals the trial court's order requiring him to continue paying postmajority child support for his daughter as well as part of her postsecondary educational expenses. His former wife, Valerie Tollefsen, cross appeals and argues that the trial court erred in requiring Gary[1] to pay only half of their daughter's postsecondary educational expenses at a public school. Because the trial court did not apply the proper standard in modifying the original child support order, and because it issued inherently contradictory conclusions of law, we reverse the modification order and remand for further proceedings consistent with this opinion.

---

[1] We refer to the parties by their first names for clarity.

FACTS

Gary and Valerie were divorced on February 5, 2003, and an order of child support ("2003 order") was entered on the same date. Their two children, Nathaniel and Lila, were then 20 and 11 years old. The 2003 order specified as follows with regard to Gary's support obligations for Lila:

> The obligor parent shall pay $1,000.00 per month in child support for Lila until she [r]eaches age 18 or graduates from high school, whichever comes last. If Lila elects to pursue a post-secondary education, child support for her will continue until she turns 23 years old.

Clerk's Papers (CP) at 3. Paragraph 3.14 provided for additional support:

> In the event that the children pursue a post-secondary education then, in addition to support provided for in paragraph 3.5, Obligor parent shall pay the tuition, book expenses and student fees, if any, for both children. If a child opts to take a "break," and not continue his/her post secondary education for a reason other than illness then the father is not responsible to resume his payments for tuition, book expenses and student fees.

CP at 5. In addition, paragraph 3.18 required Gary to provide the children with health insurance if such coverage became available through his employment or union membership and did not exceed 25 percent of his basic child support obligation.

Gary paid support pursuant to the 2003 order without dispute until he filed a motion to suspend Lila's child support in April 2010.[2] He explained that Lila would turn 19 in August 2010, and that she had been attending Grays Harbor College and working toward both her general education development (GED) certificate and college credits. Gary had learned recently, however, that Lila was no longer attending either high school, GED classes, or community

---

[2] Gary's obligation to pay Nathaniel's support is not at issue.

college. He sought to have his "regular and post-secondary" child support obligation suspended until Lila reenrolled in school full time. CP at 14.

At the May 10 hearing on his motion, Gary argued that while the 2003 order provided for continuing support if Lila took a break during college for health reasons, it did not so provide if she took a break from high school. Valerie explained that Lila had transferred to Grays Harbor College in 2007 to try to earn her GED, that she had been out of school since November 2009, and that she had been trying to reenroll every quarter. The court ordered a subsequent hearing with medical evidence and also ordered all current support to remain in effect until then. On May 11, Valerie filed a petition/motion for child support to continue. She asserted that Lila had not been able to complete high school or earn her GED because of significant health issues, and she sought an order keeping Gary's child support and postsecondary educational support obligations in place through Lila's 23rd birthday.

On August 12, 2010, the court held an evidentiary hearing on Gary's motion to suspend child support and Valerie's motion to continue child support. During the hearing, Gary asserted that his motion to suspend nonmajority child support was moot because he had learned two days earlier that Lila had recently completed her GED. Gary added that his obligation to pay postsecondary child and educational support would begin when he had proof of Lila's full-time enrollment in college. Agreeing that any dispute about nonmajority support was moot, Valerie explained that Lila was enrolled full time for the summer and would apply for full-time enrollment in the fall. The trial court addressed Gary's motion in its oral ruling:

> [Y]ou've withdrawn your motion, so I'm not going to let you revisit it on the high school. . . . You already said it was moot. It's moot. Candidly, I don't consider for purposes of dissolution decree is a GED equal to a high school education.
>
> . . . .

3

> . . . If this matter had [come] before me about high school support and dropping out and going on a GED, . . . I would have terminated the support obligation because she was not in high school. . . . So I guess you gave up on that, because I'm not letting you bring it back. Your client has accepted the GED to move into the postsecondary matter.

CP at 25-27. The court warned Lila that she would need to be enrolled full time at an approved college, university, or vocational school to continue receiving support.

In the written ruling that followed, the trial court stated that Lila had finished her GED and that Gary had withdrawn his motion regarding "regular" child support as moot; that the postsecondary provisions of the 2003 order applied to future child support; that the postsecondary education must be full time and continuous for support to continue; that if Lila did not attend or stopped attending school, the support obligations would cease 30 days thereafter; and that Gary was responsible for $2,000 of Valerie's attorney fees.

Lila then enrolled at the University of Phoenix, an online school. When Gary learned of that enrollment, he filed a "Motion and Affidavit Re: Post secondary Support" on September 9, 2010. He asserted that he believed Lila would continue attending Grays Harbor College and that no one had consulted him about her enrollment at the far more expensive online school. The court set the matter for trial and ordered Gary to continue paying support pursuant to the 2003 order pending a final determination of his support obligations.

At the May 27, 2011 trial, Lila's physician testified that Lila has bipolar disorder and anxiety issues for which he began treating her in 2006. Lila has seen several psychiatrists about these conditions. Lila testified that she withdrew from local college classes because of anxiety and depression and that she has done better at the University of Phoenix than at on-campus schools. She was not sure whether she quit high school in November 2009, but she thought she waited a few months to start her GED.

Valerie testified that Lila had been attending Grays Harbor College, albeit unsuccessfully, before she enrolled at the University of Phoenix. Valerie explained that she had not earned a paycheck since before her children were born and that her only income, independent of the child support payments, is $10,800 a year from her pension.

Gary testified that he had no input regarding Lila's decision to enroll at the University of Phoenix. He objected to her decision because of the university's poor reputation, for-profit status, and high cost. Gary acknowledged that Lila was doing well at the university, that she did not do well at Grays Harbor College, and that she has medical problems. He said he would not mind paying postsecondary support if he approved of Lila's college choice. Gary is a longshoreman with an annual income of $82,000 and a 401K plan. A Grays Harbor College credentials evaluator testified that the University of Phoenix is an accredited school with a tuition that is 46 percent higher than public school tuition.

In closing, Gary argued that his first motion from April 2010 should control. He appeared to adopt the trial court's earlier reasoning in arguing that his support obligation should have terminated at that time. Noting that he had not paid any of Lila's expenses at the University of Phoenix, Gary asked to be responsible only for the costs of a community college and completely excused from paying child support. Valerie responded that Gary's previous motion regarding nonmajority support was moot, that Lila had applied to the University of Phoenix six days after the parties agreed the motion was moot, and that Gary should be ordered to pay postsecondary support as set forth in the 2003 order.

In its oral ruling, the court said it had made a mistake in its August 2010 ruling and now believed that Gary's support obligation stopped when Lila quit high school in November 2009, a few months after she turned 18. The court added, however, that the parties had agreed the issue

5

was moot. The court also stated that it never had contemplated Lila's enrollment at the University of Phoenix and never would have authorized support for that choice. The court ordered Gary to continue to pay Lila's child support because of its fear that Gary's insurer would drop her medical coverage without such support, and it also ordered Gary to pay half of Lila's expenses for tuition and books at any public school institution. The court ordered each party to pay its own fees.

At the subsequent hearing on the written findings and conclusions, Valerie argued that Gary's April 2010 motion to suspend child support was not still before the court. Gary responded that it was still "in some fashion" before the court and that even though the argument regarding suspension of nonmajority support was moot, the facts regarding that support showed that his overall support obligation should have terminated when Lila dropped out of high school. Report of Proceedings (June 3, 2011) at 6. The court stated that it had made a mistake concerning the nonmajority support but that Gary had paid it. The court added that Lila had obtained an equivalency degree and was entitled to postsecondary support, and it denied Gary's motion for reconsideration.

Gary appeals and argues that he is not required to pay support of any kind. Valerie cross appeals and challenges the following findings of fact and conclusions of law:

**2.2 Findings of Fact**

. . . .

4.  By her own testimony, Lila Tollefsen stopped attending high school in November 2009.
5.  By her own testimony, Lila Tollefsen believed she had completed her GED by April 2010 and did not take GED classes thereafter.
6.  Between November 2009 and September 2010, Lila Tollefsen was not attending or enrolled in any post secondary educational institution on a full time basis.

. . . .

6

8. Valerie Tollefsen has presented evidence that Lila Tollefsen has suffered from mental health issues which were not apparent at the time of entry of the original child support order.

. . . .

10. Gary Tollefsen was afforded no participation opportunity in this choice of institutions. Gary Tollefsen objects to being required to pay for the University of Phoenix for several reasons stated in his testimony. The court finds Mr. Tollefsen's reasons to be entirely appropriate, and the court would not have ordered Mr. Tollefsen to pay full tuition for the University of Phoenix.

. . . .

**3.1 Conclusions of Law**

. . . .

1. Gary Tollefsen's obligation to pay post majority, non post-secondary child support should have properly terminated when the minor child stopped attending high school in November 2009.

2. Valerie Tollefsen's [sic] did not timely file a motion to extend post majority, non post-secondary child support, with the result that Gary Tollefsen had no legal obligation to pay current child support of any kind between November 2009 and at least September 2010.

3. The 2003 child support order did not properly create a post-secondary child support obligation due to the age of Lila Tollefsen at the time of entry of that order, 11 years of age.

. . . .

5. The post-secondary education requirements of the original child support order are reaffirmed, but the father should not be required to pay any of the cost of the University of Phoenix due to the various appropriate considerations raised in his testimony.

6. The father should be required to pay one-half of the tuition and fees and book expenses for any public school which Lila Tollefsen might enroll in and attend commencing September 2011.

CP at 179-80. The court also concluded that it is in Lila's best interest to remain covered by Gary's medical insurance and to pursue her education. The conclusions of law did not refer to the fact that the court also ordered Gary to continue paying regular child support.

## DISCUSSION

APPEALABILITY

Gary's notice of appeal challenges the trial court's orders of May 10, 2010; August 12, 2010; October 18, 2010; and June 3, 2011. Valerie challenges Gary's ability to appeal the 2010

orders and argues that we lack jurisdiction to consider the issues these orders resolved.[3] *See Moore v. Wentz*, 11 Wn. App. 796, 800, 525 P.2d 290 (1974) (where notice of appeal not filed within 30 days of entry of order or within 30 days of timely motion made subsequent to judgment, Court of Appeals lacked jurisdiction to entertain appeal of order). We reject Valerie's jurisdictional challenge because of the ongoing nature of this support obligation dispute. For the reasons set forth below, however, we decline to reach the merits of most of the issues raised.[4]

ORDER ON POSTMAJORITY CHILD SUPPORT AND POSTSECONDARY EDUCATIONAL EXPENSES

The order requiring Gary to pay half of Lila's expenses at a state institution modifies the postsecondary support provisions in the 2003 support order, which contained no such limitation on Lila's ability to receive postsecondary educational support. Valerie argues that the trial court improperly modified the 2003 support order because Gary never filed the petition and financial worksheets required for such modification under RCW 26.09.175.

We review a modification of child support for abuse of discretion. The challenging party must demonstrate that the trial court's decision is manifestly unreasonable, based on untenable grounds, or granted for untenable reasons. *In re Marriage of Schumacher*, 100 Wn. App. 208, 211, 997 P.2d 399 (2000). A trial court also violates the abuse of discretion standard if it bases its ruling on an erroneous view of the law. *In re Marriage of Choate*, 143 Wn. App. 235, 240,

---

[3] Valerie also argues that Gary improperly extended the appeal period by inserting old orders into the new order. The findings and conclusions do not address previous orders, however, and we reject this claim of error.

[4] These issues include whether Gary's entire support obligation ended because Lila dropped out of high school or because Valerie did not seek postsecondary support in a timely manner, and whether Gary's postsecondary support obligation was void ab initio because of Lila's age at the time of the 2003 order.

177 P.3d 175 (2008). In addition, substantial evidence must support the trial court's findings of fact.[5] *Schumacher*, 100 Wn. App. at 211.

RCW 26.09.175(1) provides that "[a] proceeding for the modification of an order of child support shall commence with the filing of a petition and worksheets. The petition shall be in the form prescribed by the administrator for the courts." A decree is modified when a party's rights are extended beyond or reduced from those originally intended in the decree. *In re Marriage of Jarvis*, 58 Wn. App. 342, 345, 792 P.2d 1259 (1990).

Gary argued below that if his support obligation did not terminate, the court should modify it based on the change of circumstances that included Lila's health issues as well as her decision to attend the University of Phoenix. But Gary did not comply with RCW 26.09.175 in seeking modification, and we reverse the modification on this basis. *See In re Marriage of Sagner*, 159 Wn. App. 741, 744-45, 247 P.3d 444 (affirming child support modification because trial court had continuing jurisdiction to modify support and father complied with requirements of RCW 26.09.175), *review denied*, 171 Wn.2d 1026 (2011).

In addition to complying with RCW 26.09.175, the party seeking modification of a support obligation generally must show a substantial change of circumstances since the decree's entry that was not contemplated at the time of the decree.[6] RCW 26.09.170(1); *In re Marriage of Arvey*, 77 Wn. App. 817, 820, 894 P.2d 1346 (1995). The trial court's findings refer to two changes in circumstance: Lila's health and her decision to attend the University of Phoenix. The

---

[5] Valerie challenges several of the findings of fact. We do not address these challenges, however, because they are not supported by adequate argument and because they are irrelevant to both the relief granted and our resolution of this case. *In re Marriage of Angelo*, 142 Wn. App. 622, 628 n.3, 175 P.3d 1096, *review denied*, 164 Wn.2d 1017 (2008).

[6] The exceptions to this requirement do not apply here. RCW 26.09.170(1)(b).

modification imposed, however, does not respond to any change in Lila's health. Rather, it appears to rest solely on her college choice. No express limitations were placed on that choice in either the 2003 order or in the trial court's order of August 2010. In August, the court instructed Lila that continued support depended solely on her full-time enrollment at an accredited school. The University of Phoenix is an accredited school, and Lila's decision to attend the University of Phoenix rather than the expected Grays Harbor College does not constitute a substantial change of circumstance sufficient to justify the significant support modification the trial court imposed.

The trial court concluded that it was in Lila's best interest to continue her education, but the "best interests of the child" standard does not govern a support modification. We also observe that the trial court's order requiring Gary to pay regular child support as well as half of Lila's college expenses is inconsistent with its conclusion that Gary's support obligations terminated in 2009 and with its conclusion that the 2003 order did not properly create a postsecondary support obligation due to Lila's age. We cannot resolve these inconsistencies, so we reverse the order modifying Gary's child support obligations and remand for new proceedings that comply with the requirements of RCW 26.09.170 and .175. Any resulting order must rest on findings that support consistent conclusions regarding Gary's support obligations.

ATTORNEY FEES

Valerie argues that the trial court erred in declining to award her attorney fees and that she is entitled to such an award on appeal.

Valerie first contends that she is entitled to fees under RCW 26.18.160 which provides that "[i]n any action to enforce a support or maintenance order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees." Without citing the record, Valerie argues that her "Motion and Declaration to Present Oral Testimony on

10

Motion for Payment of Child Support and Postsecondary Support" was brought consistent with RCW 26.18.160. Br. of Resp't at 23. As Gary asserts, there is no such pleading in the record. Valerie did file a "Petition/Motion for Child Support to Continue" in May 2010, and the court awarded her fees in its August ruling. The record does not contain any subsequent action or pleading to enforce the support order that would warrant an additional award of fees under RCW 26.18.160.

Valerie also contends that the trial court should have awarded her fees under RCW 26.09.140 and because of Gary's intransigence. RCW 26.09.140 allows for such awards in family law cases:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

The award of attorney fees under this statute is within the sound discretion of the court and depends on the need of the recipient and the other party's ability to pay. *In re Marriage of Ochsner*, 47 Wn. App. 520, 528, 736 P.2d 292, *review denied*, 108 Wn.2d 1027 (1987). The court may, however, alternatively award fees if one spouse's intransigence caused the spouse seeking a fee award to require additional legal services. *In re Marriage of Crosetto*, 82 Wn. App. 545, 563, 918 P.2d 954 (1996). "Intransigence is the quality or state of being uncompromising." *Schumacher*, 100 Wn. App. at 216. Intransigence is demonstrated by litigious behavior, bringing excessive motions, or discovery abuses. *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002), *review denied*, 148 Wn.2d 1011 (2003). If

intransigence is established, the financial resources of the spouse seeking the fees are irrelevant. *Crosetto*, 82 Wn. App. at 564.

Gary's income is considerably greater than Valerie's income, but RCW 26.09.140 does not *require* an award of fees where one spouse's income exceeds the other's income. The trial court was clearly troubled by Lila's unanticipated decision to attend the University of Phoenix. The trial court declined to award either party fees, and this decision does not appear to be an abuse of discretion under RCW 26.09.140. Moreover, Lila's decision to attend the University of Phoenix, after she implied that she would attend a far less expensive community college, was the impetus for Gary's continued support challenge and undermines Valerie's claim of intransigence.

Valerie also contends that RCW 26.09.140 entitles her to attorney fees on appeal, as the statute adds that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In considering such a request for fees under RCW 26.09.140, we consider the arguable merit of the issues raised and the parties' financial resources. *In re Marriage of Booth*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). Appellate courts have granted attorney fees under RCW 26.09.140 when one party provided an affidavit of need as RAP 18.1 requires and the other party did not submit a contravening affidavit. *See In re Marriage of Ambrose*, 67 Wn. App. 103, 110, 834 P.2d 101 (1992).

But Valerie did not file an affidavit showing both her need and Gary's ability to pay as RAP 18.1 requires. *In re Marriage of Hoseth*, 115 Wn. App. 563, 575, 63 P.3d 164, *review denied*, 150 Wn.2d 1011 (2003). Consequently, we deny her request for attorney fees on appeal.

No. 42334-1-II

Reversed and remanded.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_QUINN-BRINTNALL, J._

QUINN-BRINTNALL, J.

We concur:

_JOHANSON, A.C.J._

JOHANSON, A.C.J.

_BJORGEN, J._

BJORGEN, J.

13