151 P.3d 1079 (2007)
CLALLAM COUNTY CITIZENS FOR SAFE DRINKING WATER, Protect the Peninsula's Future, and Eloise Kailin, Appellants,
v.
CITY OF PORT ANGELES and Washington Dental Service Foundation, LLC, Respondents.
No. 34881-1-II.
Court of Appeals of Washington, Division 2.
February 6, 2007.
*1080 Gerald Barclay Steel, Attorney at Law, Olympia, WA, for Appellants.
William E. Bloor, City of Port Angeles, Port Angeles, WA, Charles Edward Maduell, Davis Wright Tremaine LLP, Michele G. Radosevich, Attorney at Law, Seattle, WA, Respondents.
HOUGHTON, C.J.
¶ 1 In an administrative appeal of a Determination of Nonsignificance (DNS), the City of Port Angeles Council ruled that its decision to fluoridate the public water supply was categorically exempt from environmental review under the State Environmental Policy Act (SEPA), chapter 43.21C RCW. Clallam County Citizens for Safe Drinking Water, Protect the Peninsula's Future, and Eloise Kailin (collectively, Citizens) appealed to the superior court. The superior court dismissed Citizens' appeal, finding the proposal exempt. Because the superior court correctly determined that the City of Port Angeles (City) fluoridation proposal is categorically exempt from environmental review and the issue was properly preserved for review, we affirm.

FACTS
¶ 2 On February 18, 2003, the City passed a motion to fluoridate its public water supply. Brad Collins, the responsible official for purposes of SEPA review, issued a DNS concluding that the City's decision to construct a fluoride feed facility and fluoridate the public water supply did not have a probable significant adverse impact on the environment. Collins also had determined that the proposal was categorically exempt from SEPA review because "the Washington State Department of Health allows fluoridation of public water supplies at the concentration range of .8-1.3 mg/L (ppm) pursuant to WAC 246-290-460."[1] 2 Administrative Record (AR) at 2623.
*1081 ¶ 3 Citizens appealed the DNS to the city council (Council)[2] in accordance with Port Angeles Municipal Code (PAMC) 15.04.280, arguing that fluoridation could have significant detrimental effects on public health and, therefore, an environmental impact statement should be prepared. The Council heard extensive testimony from numerous witnesses concerning the adequacy of the environmental checklist addressing the potential health impacts of fluoridation. When it rendered its decision, the Council found that fluoridation of public water supplies was categorically exempt from SEPA review under WAC 197-11-800(23)(b)[3] and (1)(b)(iii). The Council also determined that the DNS was not clearly erroneous.
¶ 4 Citizens appealed the Council's decision and findings to the superior court. The City moved to dismiss the appeal under CR 12(b)(6), arguing that its fluoridation proposal was categorically exempt from SEPA review under WAC 197-11-800(12), -800(23), -845 and, thus, Citizens could not state a claim for relief. Citizens opposed the motion, arguing that the City was precluded from raising the categorical exemptions because it did not properly present them in the administrative appeal. Further, Citizens asserted that the proposal did not fit within any categorical exemption and, if it did, the exemption violated SEPA.
¶ 5 The superior court granted the City's motion to dismiss, finding the City's fluoridation program categorically exempt from SEPA review under WAC 197-11-845 and rejecting Citizens' other arguments.
¶ 6 Citizens moved for reconsideration, arguing that the fluoridation proposal comprised part of a larger proposal to remove the Elwha River Dams, to change the point of diversion for the municipal water supply, and to construct a new water treatment facility. And because SEPA prohibits "piecemealing" environmental review under WAC 197-11-305(1), Citizens claimed that the decision to fluoridate must be reviewed as part of a larger proposal that is not categorically exempt. Clerk's Papers (CP) at 39. The superior court found that the City's decision to fluoridate the water was independent from the federal dam removal project and denied the motion for reconsideration.
¶ 7 Citizens appealed and sought direct review by our Supreme Court, arguing that the case involved a fundamental and urgent issue of broad public import. The Court declined to grant review and transferred the case to us.

ANALYSIS

CATEGORICAL EXEMPTION FROM SEPA REVIEW[4]

A. WAC 197-11-845
¶ 8 Citizens assign error to the trial court's decision that the City's fluoridation *1082 proposal is categorically exempt, claiming that although WAC 197-11-845 might exempt the actions of the Department of Health in approving and regulating municipal fluoridation, it does not apply to the City's decision to initiate fluoridation.
¶ 9 Statutory interpretation presents questions of law that we review de novo. Burton v. Lehman, 153 Wash.2d 416, 422, 103 P.3d 1230 (2005). Here, we apply that standard to determine the meaning of a SEPA provision. See Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997); see also RICHARD L. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT: A LEGAL AND POLICY ANALYSIS § 20.08, at XX-XX-XX-XX (2006).
¶ 10 SEPA requires agencies, including local governments, to prepare an environmental impact statement (.) for all major actions having a probable, significant adverse environmental impact. RCW 43.21C.031(1). But the legislature also directed the Department of Ecology (DOE)[5] to adopt categories of actions that are not to be considered as potential major actions significantly affecting environmental quality. RCW 43.21C.110(1)(a). DOE accordingly adopted Part Nine of the SEPA rules, which sets forth numerous types of actions that are not considered to be major actions and are, therefore, categorically exempt from threshold determination and EIS requirements. See WAC 197-11-800 et seq. WAC 197-11-845 is one of these administrative exemptions.
¶ 11 WAC 197-11-845 categorically exempts from review "[a]ll actions under programs administered by the department of social and health services as of December 12, 1975," with specified exceptions. An "action" is defined as "(a) New and continuing activities (including projects and programs) entirely or partly financed, assisted, conducted, regulated, licensed, or approved by agencies; (b) New or revised agency rules, regulations, plans, policies, or procedures; and (c) Legislative proposals." WAC 197-11-704(1). Thus, WAC 197-11-845 broadly exempts all new or continuing programs subject to official approval or oversight, as well as official changes in law or policy, provided that the activity occurs under a program the Department of Social and Health Services (DSHS) administers.
¶ 12 Based on these provisions, the City's proposal to fluoridate the public drinking water supply is an action under a program that DSHS administered on December 12, 1975. See former WAC 248-54-370 (1970) (fluoridation of public water supplies was formerly regulated by DSHS). That the Department of Health currently administers the same program does not affect this interpretation. The City's proposed fluoridation program could not occur without the Department of Health's approval and continuing oversight. See WAC 246-290-460. The proposal is an action "under" the Department of Health's fluoridation program because it is bound by its requirements and subject to its authority. See WEBSTER'S THIRD NEW INTERN'L DICTIONARY 2487 (2002) (defining "under"). Accordingly, WAC 197-11-845 makes the City's fluoridation proposal exempt from SEPA review.

B. Separate Agency Action
¶ 13 Citizens also argue that the City's legislative proposal to construct and operate a fluoridation system is an action separate from the state-level regulation of fluoridation. Citizens point to WAC 197-11-810, claiming that provision limits the scope of the exemption established in WAC 197-11-845 to those actions occurring within DSHS. Therefore, Citizens contend that WAC 197-11-845 does not exempt the City's proposal to fluoridate.
¶ 14 WAC 197-11-810 provides, "The exemptions in WAC 197-11-820 through XXX-XX-XXX *1083 relate only to the specific activities identified within the named agencies." The plain language does not support Citizens' reading.[6] Citizens would have us read the provision to exempt "the specific activities . . . within the named agencies," eliminating the word "identified." But courts presume the legislature says what it means and means what it says. In re Marriage of Kahle, 134 Wash.App. 155, 158, 138 P.3d 1129 (2006).
¶ 15 We disagree with Citizens' argument that the legislature exempted activities "occurring" or "taking place" within the named agencies; rather, it exempted activities "identified" within the named agencies. Within DSHS, the activities identified as exempt are all actions under programs it administers and Citizens' argument to the contrary fails.
¶ 16 Moreover, Citizens' argument runs afoul of Dioxin's prohibition against "as-applied" challenges to categorically exempt actions. 131 Wash.2d at 356, 932 P.2d 158 ("SEPA review is not required for an individual action that is properly characterized as exempt under a valid regulation."). In Dioxin, our Supreme Court considered whether the categorical exemption for the reissuance of waste discharge permits applies when the permit allows activity constituting a major action having a probable significant adverse environmental impact. 131 Wash.2d at 356, 932 P.2d 158. Noting that allowing such case-by-case challenges would be neither efficient nor cost-effective, the Court held that individual actions that fit within a categorical exemption are not subject to SEPA review. Dioxin, 131 Wash.2d at 364-65, 932 P.2d 158.
¶ 17 Here, Citizens are effectively challenging fluoridation "as applied" to the City's water supply. The exemption in WAC 197-11-845 covers all actions under WAC 246-290-460, which broadly authorizes the Department of Health to approve and oversee fluoridation. Thus, WAC 197-11-845 exempts from SEPA review the practice of fluoridating public water. But interpreting WAC 197-11-810 to require review of the City's fluoridation proposal would be, in effect, requiring "as applied" review of fluoridation. Dioxin does not permit this result.
¶ 18 WAC 197-11-810 does not provide a basis for distinguishing between the actions of the City and the Department of Health regarding the decision to fluoridate. The exemption in WAC 197-11-845 is broadly drafted to include all actions under fluoridation programs and includes the City's decision to fluoridate. Citizens' argument fails.

C. Segment of Larger Proposal Containing Exempt and Nonexempt Actions
¶ 19 Citizens further argue that the City's program is a segment of a larger proposal including multiple agency actions, some of which are exempt and some of which are not. Therefore, Citizens argue that under WAC 197-11-305(1), the entire proposal is not exempt.
¶ 20 WAC 197-11-305(1)(b)(i) provides that a proposal, otherwise categorically exempt, will not be exempt if the proposal is a segment of a proposal that includes a "series of actions, physically or functionally related to each other, some of which are categorically exempt and some of which are not." But this rule does not assist Citizens because, as discussed above, the City's action itself is exempt under WAC 197-11-845.
¶ 21 Further, the superior court correctly observed that this "seems a bit like arguing that when a property owner signs a construction agreement with a contractor that action is itself subject to SEPA review." CP at 208. That the City is an agency under SEPA rather than a private actor does not affect this analysis because, in this instance, the City is in the same position as a private applicant: it is powerless to take any action consistent with its decision until it receives approval from the permitting agency. See WAC 246-290-460. It is the agency's decision that is subject to review, not the underlying action. See RCW 43.21C.075(4) (judicial *1084 review is afforded to those aggrieved by agency action). Accordingly, the City's proposal to fluoridate the water, contingent on Department of Health approval, is not reviewable under SEPA.

C. PRESERVATION FOR REVIEW
¶ 22 Citizens also contend the superior court erred in finding that the City properly raised exemption during the administrative appeal. They argue that the City presented claims of exemption under only WAC 197-11-800(23)(b)[7] and -800(1)(b)(iii).[8] And because the City did not claim the proposal was exempt under WAC 197-11-845[9] during the administrative appeal, Citizens maintain that the City was precluded from raising the issue on review.
¶ 23 Although that regulatory provision was not cited in the administrative record, the record shows that Collins, the City's responsible official, determined that the proposal was categorically exempt because "the Washington State Department of Health allows fluoridation of public water supplies at the concentration range of .8-1.3 mg/L (ppm) pursuant to WAC 246-290-460." 2 AR at 2623. WAC 246-290-460 governs the Department of Health's fluoridation program, which is the same program DSHS administered in 1975 and is exempted in WAC 197-11-845. Thus, the City raised the issue below.

THE DNS
¶ 24 Citizens further argue that the Council's decision on administrative appeal is clearly erroneous because it determined that the fluoridation proposal is categorically exempt from SEPA review and also concluded that the DNS is factually and legally valid. The City counters that nothing in SEPA or the SEPA rules precludes an agency from issuing a DNS on a project determined to be categorically exempt. We agree with the City.
¶ 25 SEPA requires the preparation of an EIS only for "proposals for legislation and other major actions having a probable significant, adverse environmental impact." RCW 43.21C.031(1). But because the statute remains silent as to how to determine whether an action is a major action having a probable significant, adverse environmental impact, SEPA rules require the lead agency to make a threshold determination "for any proposal which meets the definition of action and is not categorically exempt." WAC 197-11-310(1). The threshold determination is either a DNS or a determination of significance (DS). WAC 197-11-310(5).
¶ 26 "In any action involving an attack on a determination by a governmental agency relative to the requirement or the absence of the requirement, or the adequacy of a `detailed statement', the decision of the governmental agency shall be accorded substantial weight." RCW 43.21C.090. An agency's determination that a proposal is categorically exempt falls within this statute because it is a finding that environmental review is not required; therefore, a finding of exemption is given substantial weight. See RCW 43.21C.110(1)(a). The "substantial weight" requirement directs us to review the agency's decision under a "clearly erroneous" standard. Norway Hill Pres. & Protection Ass'n v. King County Council, 87 Wash.2d 267, 275, 552 P.2d 674 (1976), superseded by statute on other grounds as recognized in Moss v. City of Bellingham, 109 Wash.App. 6, 21, 31 P.3d 703 (2001). A finding is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been made. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000).
*1085 ¶ 27 Although the SEPA rules clearly provide that any project that is not categorically exempt must be subject to a threshold determination, the rules do not prohibit an agency from issuing a threshold determination on a project that is categorically exempt from EIS requirements. Although the rules' structure suggests that a project is either categorically exempt or subject to a threshold determination, there is nothing prohibiting the City from performing a threshold determination on an exempt proposal. Absent a statutory prohibition, the Council's conclusion that the DNS was sufficient and the proposal is categorically exempt is not clearly erroneous.
¶ 28 Furthermore, as the City points out, there is no contradiction between upholding a DNS while simultaneously concluding the proposal is categorically exempt. A DNS reflects the agency's threshold determination that the proposal is not a major action with potential significant, adverse environmental impacts. WAC 197-11-734. Similarly, a categorical exemption reflects DOE's conclusion that a type of proposal is not a major action with potential significant, adverse environmental impacts. RCW 43.21C.110(1)(a); WAC 197-11-720. Because further environmental review is not required in either case, the conclusions are consistent and are, therefore, not clearly erroneous.[10]
¶ 29 Citizens also argue that the superior court erred when it found it could not substitute its judgment for the Council's as to whether the project is categorically exempt. Because whether the fluoridation proposal is categorically exempt presents a legal question, Citizens contend that the superior court should have reviewed the issue de novo, giving no deference to the Council's determination. We disagree.
¶ 30 Citizens' argument overlooks the statutory mandate that an agency's determination relative to the requirement of an EIS is to be afforded substantial weight by the courts. RCW 43.21C.090. The superior court correctly noted that the determination was entitled to substantial weight.
¶ 31 Because nothing prohibits the City from issuing a DNS when it had also determined that the fluoridation proposal was categorically exempt, the Council's decision is not clearly erroneous.

CR 12(b)(6)
¶ 32 Citizens argue that because the trial court considered matters outside the pleadings in ruling on the City's motion under CR 12(b)(6), namely the administrative record, the superior court erred in failing to treat the motion as a motion for summary judgment. We disagree.
¶ 33 We review a CR 12(b)(6) ruling de novo as a question of law. Burton, 153 Wash.2d at 422, 103 P.3d 1230. Dismissal under CR 12(b)(6) is only appropriate if it appears beyond doubt that the plaintiff cannot prove any set of facts that would justify recovery. Burton, 153 Wash.2d at 422, 103 P.3d 1230.
¶ 34 When the parties present matters outside the pleadings that the trial court accepts on a motion under CR 12(b)(6), the court treats the motion as one for summary judgment and disposes of it accordingly. In a summary judgment motion, the court considers the evidence in the light most favorable to the nonmoving party. CLEAN v. City of Spokane, 133 Wash.2d 455, 462, 947 P.2d 1169 (1997). Citizens contend that the superior court's failure to treat the motion as a motion for summary judgment was error "to the degree that the court considered any disputed facts when it made its decision." Appellant's Br. at 29.
¶ 35 But as the City correctly notes, the only issue raised in the City's CR 12(b)(6) *1086 motion was whether the fluoridation proposal was categorically exempt. This issue did not require the court to consider any disputed facts but, rather, entailed interpreting relevant statutes and applying the undisputed facts in the administrative record. Contrary to Citizens' contention, the superior court was not obligated to "accept the position that fluoridation of water is an unhealthy practice which should be eliminated and then proceed to an analysis of the record." CP at 218. Citizens' argument fails.
¶ 36 Affirmed.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] WAC 197-11-845 exempts "[a]ll actions under programs administered by the department of social and health services as of December 12, 1975." On December 12, 1975, the Board and Division of Health of the Department of Social and Health Services (DSHS) regulated fluoridation of public water supplies. See former WAC 248-54-370 (1970). DSHS required purveyors of public water desiring to install fluoridation facilities to submit plans and specifications for approval. Former WAC 248-54-370.

The Department of Health currently performs the same functions that were formerly assigned to DSHS. See WAC 246-290-460. Accordingly, the exemption for fluoridation activities under the DSHS program extends to the same program administered today by the Department of Health.
[2] The city council is not a separate entity from the City. But to distinguish between the roles the City played as decision-maker and proponent in the administrative appeal, we refer to it as the Council when discussing its decision on the administrative appeal.
[3] Citizens note that the Council actually cited WAC 197-11-800(24)(b) but WAC 197-11-800(24)(b) does not apply as it categorically exempts granting licenses to remove firewood. We assume that the Council intended to cite WAC 197-11-800(23)(b), which provides an exemption for utility-related actions involving "storm water, water and sewer facilities, lines, equipment, hookups or appurtenances including, utilizing, or related to lines eight inches or less in diameter." See AR at 2623 (written testimony of the responsible official indicating he considered the proposal exempt under WAC 197-11-800(23)(b)). Thus, we refer to WAC 197-11-800(23)(b) as the first basis for exemption.
[4] We recently considered the application of SEPA's categorical exemptions in PUD No. 1 of Clark County v. Pollution Control Hearings Board, Nos. 33427-5-II and 33707-0-II, ___ Wash. App.2d ___, 151 P.3d 1067, 2007 WL 339996 (2007). In that case we considered whether the exemption in WAC 197-11-800(17) applied to a proposal to drill a test well, concluding that the exemption applied and that the Department of Ecology's interpretation of the exemption was entitled to deference. PUD No. 1, ___ Wash. App.2d at ___, 151 P.3d at 1070-71. Because PUD No. 1 involves a different categorical exemption and a different administrative framework, it does not affect our analysis in this case.
[5] DOE is entrusted with interpreting and implementing SEPA through rule making. RCW 43.21C.110.
[6] Citizens urge us to adopt their interpretation either under a plain language reading or by determining that the rules are ambiguous. To that end, Citizens submitted numerous historical documents relating to the adoption of WAC Part Nine in an appendix to their opening brief. Because the language is unambiguous, we do not resort to legislative history to ascertain legislative intent. See Shoop v. Kittitas County, 149 Wash.2d 29, 36, 65 P.3d 1194 (2003).
[7] WAC 197-11-800(23)(b) exempts all "storm water, water and sewer facilities, lines, equipment, hookups or appurtenances including, utilizing or related to lines eight inches or less in diameter."
[8] WAC 197-11-800(1)(b)(iii) exempts "construction of an office, school, commercial, recreational, service or storage building with 4,000 square feet of gross floor area, and with associated parking facilities designed for twenty automobiles."
[9] WAC 197-11-845 categorically exempts from review "[a]ll actions under programs administered by the department of social and health services as of December 12, 1975," except for eight specific actions not at issue in this case.
[10] Citizens also argue that by inconsistently issuing a DNS and then claiming exemption, the City has subjected all to the costs of an unnecessary administrative appeal. These costs would not have been justified had the City simply found the project exempt and not issued the DNS.

Although we might sympathize with Citizens' position, it seems to derive more from the drafting of the SEPA rules rather than from any legal insufficiency in the City's review. WAC 197-11-305(2) allows agencies to make determinations of categorical exemption without providing notice to the public or even documenting the decision. Although it seems clear that Citizens' concern could be remedied by requiring the agency to document and release its determination that a proposal is categorically exempt, such action is not presently required.